FILED
2015 Jan-08  PM 02:21
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION**

| | |
|---|---|
| **KYRA CARVER,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.:  4:13-cv-00906-VEH** |
| | ) |
| **CITY OF PELL CITY, GREGORY** | ) |
| **TURLEY, FRANKLIN GREEN,** | ) |
| **RICHARD WOOD, and JAMES** | ) |
| **JONES,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM OPINION

## I.  INTRODUCTION AND PROCEDURAL HISTORY

Plaintiff Kyra Carver ("Ms. Carver") initiated this civil rights lawsuit on May 14, 2013, against Defendants City of Pell City ("Pell City"), Chief of Police Gregory Dean Turley ("Chief Turley"), Officer Franklin Green ("Officer Green"), Officer Richard Woods ("Officer Woods"), and Officer James Jones ("Officer Jones"). Chief Turley and Officers Green, Woods, and Jones were sued in their individual and official capacities.  Ms. Carver's complaint contains counts which assert federal and state constitutional claims stemming from her arrest on May 16, 2011, for the purchase of pseudoephedrine. (Doc. 1 ¶ 9).

According to Ms. Carver's complaint (doc. 1), the following six claims are pending: (1) unlawful seizure and excessive force in violation of 42 U.S.C. § 1983 against Officers Jones, Woods, and Green; (2) intentional infliction of emotional distress against Officers Jones, Woods, and Green; (3) negligence against Officer Jones, Woods, and Green; (4) failure to train and supervise in violation of 42 U.S.C. § 1983 against Chief Turley and Pell City; (5) failure to enact or enforce policy in violation of 42 U.S.C. § 1983 against Chief Turley and Pell City; and (6) malicious prosecution, false arrest, and false imprisonment against all Defendants.

Pending before the court is Defendants' Motion for Summary Judgment (Doc. 13) (the "Motion"), filed on September 24, 2014. The parties have supported and opposed the Motion. (Docs. 13-17). Accordingly, the Motion is ready for disposition and, for the reasons explained below, is due to be **GRANTED** as to all Ms. Carver's claims.

## II.   APPLICABLE STANDARDS

### A.   Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, summary judgment is proper if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[S]ummary judgment is proper if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.") (internal quotation marks and citation omitted). The party requesting summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings in answering the movant. *Id.* at 324. By its own affidavits – or by the depositions, answers to interrogatories, and admissions on file – it must designate specific facts showing that there is a genuine issue for trial. *Id.*

The underlying substantive law identifies which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Chapman*, 229 F.3d at 1023. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If the evidence presented by the non-movant to rebut the moving party's

3

evidence is merely colorable, or is not significantly probative, summary judgment may still be granted. *Id.* at 249.

How the movant may satisfy its initial evidentiary burden depends on whether that party bears the burden of proof on the given legal issues at trial. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). If the movant bears the burden of proof on the given issue or issues at trial, then it can only meet its burden on summary judgment by presenting *affirmative* evidence showing the absence of a genuine issue of material fact – that is, facts that would entitle it to a directed verdict if not controverted at trial. *Id.* (citation omitted). Once the moving party makes such an affirmative showing, the burden shifts to the non-moving party to produce "significant, probative *evidence* demonstrating the existence of a triable issue of fact." *Id.* (citation omitted) (emphasis added).

For issues on which the movant does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. *Id.* at 1115-16. First, the movant may simply show that there is an absence of evidence to support the non-movant's case on the particular issue at hand. *Id.* at 1116. In such an instance, the non-movant must rebut by either (1) showing that the record in fact contains supporting evidence sufficient to withstand a directed verdict motion, or (2) proffering evidence sufficient to withstand a directed verdict motion at trial based on the alleged

4

evidentiary deficiency. *Id.* at 1116-17. When responding, the non-movant may no longer rest on mere allegations; instead, it must set forth evidence of specific facts. *Lewis v. Casey*, 518 U.S. 343, 358 (1996). The second method a movant in this position may use to discharge its burden is to provide affirmative *evidence* demonstrating that the non-moving party will be unable to prove its case at trial. *Fitzpatrick*, 2 F.3d at 1116. When this occurs, the non-movant must rebut by offering *evidence* sufficient to withstand a directed verdict at trial on the material fact sought to be negated. *Id.*

### B.   Qualified Immunity

"The defense of qualified immunity completely protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003) (internal quotation marks omitted) (quoting *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003)). "To receive qualified immunity, a governmental official first must prove that he was acting within his discretionary authority. *Id*.

This is a two-part test. Under the first step, "the defendant must [prove that he or she was] performing a function that, but for the alleged constitutional infirmity, would have fallen within his legitimate job description." *Holloman ex rel. Holloman*

*v. Harland*, 370 F.3d 1252, 1266 (11th Cir. 2004). Next, the defendant must prove that he or she was "executing that job-related function." *Id.* at 1267. "Once a defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity." *Cottone*, 326 F.3d at 1358.

Until 2009, the Supreme Court had required a two-part inquiry to determine the applicability of qualified immunity, as established by *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Under the *Saucier* test, "[t]he threshold inquiry a court must undertake in a qualified immunity analysis is whether [the] plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736 (2002).

If, under the plaintiff's allegations, the defendants would have violated a constitutional right, "the next, sequential step is to ask whether the right was clearly established." *Cottone*, 326 F.3d at 1358 (quoting *Saucier*, 533 U.S. at 201). The "clearly established" requirement is designed to assure that officers have fair notice of the conduct which is proscribed. *Hope*, 536 U.S. at 739. This second inquiry ensures "that before they are subjected to suit, officers are on notice their conduct is unlawful." *Saucier*, 533 U.S. at 206.

The "unlawfulness must be apparent" under preexisting law.[1] *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Therefore, a temporal requirement exists related to this inquiry. More particularly, a plaintiff must show that a reasonable public officer would not have believed her actions to be lawful in light of law that was clearly established at the time of the purported violation. *See id.* at 639 ("[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action[,] assessed in light of the legal rules that were 'clearly established' at the time it was taken[.]") (emphasis added) (citation omitted); *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) ("If the law at that time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation.").

However, the *Saucier* framework was made non-mandatory by the Supreme Court in *Pearson v. Callahan*, 555 U.S. 223, 236 (2009), in which the Court concluded that, "while the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory." Thus, "judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding

---

[1]  Only Supreme Court, Eleventh Circuit, and Alabama Supreme Court cases can "clearly establish" the law in this litigation. *See Thomas v. Roberts*, 323 F.3d 950, 953 (11th Cir. 2003) ("In this circuit, rights are 'clearly established' by decisions of the Supreme Court, this court, or the highest court of the state in which the case arose." (citing *Hamilton v. Cannon*, 80 F.3d 1525, 1532 n.7 (11th Cir. 1996))).

which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.*

Despite the Supreme Court's modification of *Saucier*'s analytical process, the substantive analysis remains unchanged; an officer is entitled to qualified immunity protection as long as he "could have believed" his conduct was lawful. *Hunter v. Bryan*, 502 U.S. 224, 227, 112 S. Ct. 534, 536, 116 L. Ed. 2d 589 (1991). Therefore, to deny immunity, a plaintiff must affirmatively demonstrate that "no reasonable competent officer would have" acted as the public official did.  *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

## III.   FACTUAL BACKGROUND[2]

### A.   Admitted Facts

This court's "Uniform Initial Order Governing All Further Proceedings," entered on June 24, 2013, specifically sets forth the requirements regarding the preparation and submission of briefs and evidentiary materials in support of and in opposition to potentially dispositive motions. (Doc. 7). Accordingly, "the court

---

[2]  When deciding a motion for summary judgment the court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. This rule governs the following statement of facts. *See Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1241 (11th Cir. 2007) (observing that, in connection with summary judgment, a court must review all facts and inferences in a light most favorable to the non-moving party).This statement does not represent actual findings of fact. *See In re Celotex Corp.*, 487 F.3d 1320, 1328 (11th Cir. 2007). Instead, the court has provided this statement simply to place the court's legal analysis in the context of this particular case or controversy.

reserve[d] the right *sua sponte* to STRIKE any statement of fact or responsive statement that fail[ed] to comply with these requirements." (Doc. 7 at 18). Appendix II of the court's Uniform Initial Order requires that "[a]ll briefs submitted either in support of or opposition to a motion [for summary judgment] must begin with a statement of allegedly undisputed relevant material facts set out in *separately numbered paragraphs*." (Doc. 7 at 15). As to Ms. Carver, the Uniform Initial Order set forth the following requirements for stating facts:

**Opposing Party's Statement of Facts**
Each party opposing a summary judgment motion also must submit a statement of facts divided as follows.

**a. Response to Movant's Statement**
The first section must consist of only the non-moving party's disputes, if any, with the moving party's claimed undisputed facts. The non-moving party's response to the moving party's claimed undisputed facts shall be in *separately numbered paragraphs* that coincide with those of the moving party's claimed undisputed facts. Any statements of fact that are disputed by the non-moving party must be followed by a specific reference to those portions of the evidentiary record upon which the dispute is based. *All material facts set forth in the statement required of the moving party will be deemed to be admitted for summary judgment purposes unless controverted by the response of the party opposing summary judgment.*

**b. Additional Undisputed Facts**
The second section may contain additional, allegedly undisputed facts set out in *separately numbered paragraphs* that the opposing party contends require the denial of summary judgment. The second section of the opposing party's statement of facts, if any, shall be clearly designated as such. The opposing party should include only facts which the opposing party contends are true and not in genuine dispute.

### c. Additional Disputed Facts

The third section may contain additional, allegedly disputed facts set out in *separately numbered paragraphs* that the opposing party contends require the denial of summary judgment. The third section of the opposing party's statement of facts, if any, shall be clearly designated as such. Each statement of allegedly disputed facts must be followed by specific reference to those portions of the evidentiary record which both support and contradict the alleged fact.

(Doc. 7 at 16-17). Additionally, the order required that "[a]ll statements of fact must be supported by specific reference to evidentiary submissions." (Doc. 7 at 16).

The "Plaintiff's Response to Defendants' Motion for Summary Judgment" (doc. 16), which was seven pages long, does not follow these requirements. Ms. Carver failed to respond to the Defendants' claimed undisputed facts in separately numbered paragraphs coinciding with the Defendants' claimed undisputed facts. Consequently, whenever Ms. Carver has inadequately asserted a dispute over a fact that Defendants have otherwise substantiated with an evidentiary citation, the court has reviewed the cited evidence and, if it in fact fairly supports Defendants' factual assertion, has accepted Defendants' fact. On the other hand, whenever Ms. Carver has adequately disputed a fact offered by the Defendants, the court has reviewed the evidence cited by Ms. Carver and, if it in fact fairly supports Ms. Carver's factual assertion, has accepted Ms. Carver's version.

### B.    Undisputed Facts

At all times relevant, Officers Jones and Woods were employees of the Pell City Police Department ("PCPD") (docs. 13-2 at 2, 13-3 at 2) and Chief Turley was Chief of the PCPD. Officer Franklin Green was an investigator with PCPD assigned to the narcotics division from 2007 through 2010, but was no longer an investigator for PCPD on May 16, 2011, and had no interaction or communication with the district court after signing the April 30, 2009, criminal complaint. (Doc. 13-1 at 2-3). Neither Officers Jones or Green, nor Magistrate Wheeler, who issued the warrant for Ms. Carver's arrest, knew Ms. Carver before this case. (Docs. 13-1 at 3; 13-2 at 3; 13-4 at 2).

Ms. Carver purchased 6.46 grams of pseudoephedrine in February of 2009. (Doc. 13-5 at ¶ 10), AF No. 4. At the time, Ala. Code § 20-2-190(c)(2) criminalized the purchase of greater than 6 grams of ephedrine or pseudoephedrine within a thirty day period with the intent to manufacture.[3] Officer Green, an investigator for PCPD's narcotics division, routinely obtained purchase logs from area pharmacies to determine what persons were purchasing pseudoephedrine in violation of Ala. Code § 20-2-190(c)(2). (Doc. 13-1 at 2), AF No. 3.[4] After reviewing pharmacy records for

---

[3] A violation of the statute constituted a Class C misdemeanor for the first offense and subsequent violations of the statute constituted a Class C felony. Ala. Code § 20-2-190(c)(7).

[4] The designation "AF" stands for admitted fact and indicates a fact offered by Defendants that Ms. Carver has admitted. As noted above, under appendix II of the court's uniform initial order (Doc. 7) entered on June 24, 2013, "[a]ll statements of fact must be supported by specific reference to evidentiary submissions," (*id.* at 16), and "[a]ll material facts

February of 2009, Officer Green discovered that Ms. Carver purchased 6.46 grams of pseudoephedrine within a 14 day period. (Doc. 13-1 at 2). Specifically, Ms. Carver purchased 2.88 grams of pseudoephedrine from Wal-Mart on February 6, 2009, 0.70 grams from CVS on February 8, 2009, and 2.88 grams from Walgreens on February 20, 2009. AF No. 4. Officer Green's practice was to rely on the accuracy of pharmacy reports, which led to many convictions. AF No. 5.

On April 21, 2009, Officer Green completed an incident report and received his supervisor's approval to file a criminal complaint. (Doc. 13-1 at 3), AF No. 7. As a result, Officer Green signed a criminal complaint, under oath, before City Magistrate Linda Wheeler on April 30, 2009. (Doc. 13-1 at 3); AF No. 8. Based on Officer Green's complaint, and relying on the trustworthiness of the pharmacy report and Officer Green, Magistrate Wheeler found probable cause to issue the warrant for Ms. Carver's arrest. (Doc. 13-4 at 2), AF No. 9. Officer Green had no other involvement with Ms. Carver or the Municipal Court related to Ms. Carver's case after signing the criminal complaint on April 30, 2009, and left his employment with Pell City in 2010. (Doc. 13-1 at 3), AF No. 10.

---

set forth in the statement required of the moving party will be deemed to be admitted for summary judgment purposes unless controverted by the response of the party opposing summary judgment. *Id*. at 16.

Officer James Jones served as the warrant/court officer for the PCPD between 2009 and 2011. (Doc. 13-2 at 2). As the warrant/court officer, his duties included court security, warrant filing, and warrant extradition. (Doc. 13-2 at 2). On May 16, 2011, Officer Jones executed the arrest warrant on Ms. Carver at the Pell City School bus stop, where Ms. Carver was employed as a school bus driver. (Doc. 13-2 at 3; Doc. 13-5 at ¶ 8). Officer Jones handcuffed Ms. Carver with her arms behind her back. (Doc. 13-2 at 3). The handcuffs were "finger tight," allowing for him to place a finger between her wrists and the inside of the handcuffs, and "double locked," which prevented them from tightening any further. (Doc. 13-2 at 3). Ms. Carver did not resist arrest (doc. 13-5 at 17), and Officer Jones drove her to the PCPD for processing without incident. (Doc. 13-2 at 3). After processing, Officer Jones transported Ms. Carver across the street to the St. Clair County Jail, which is under contract to house Pell City's inmates and detainees. (Doc. 13-2 at 3). After transporting Ms. Carver to the St. Clair County Jail, he had no further interaction with Ms. Carver. (Doc. 13-2 at 3). Then, approximately two hours after her arrest, Ms. Carver was transported back to PCPD, where Magistrate Wheeler released Ms. Carver on her own recognizance[5] with a court date of June 14, 2011. (Doc. 13-4 at 6).

---

[5] Plaintiff maintains that, despite the fact that she was released on her own recognizance, her bail was originally set for $1,000. (Doc. 16 at 2). However, any issue of fact related to the amount of bail is not material to the analysis herein.

On May 17, 2011, the day following her arrest, Ms. Carver presented Pell City Prosecutor, Lyle Harmon, with a letter from her son's physician indicating that he instructed her to treat her son's illness with Sudafed. (Doc. 13-3 at 2). Harmon then contacted Defendant Officer Woods regarding the case against Ms. Carver. (Doc. 13-3 at 2). Harmon instructed Officer Woods to investigate the information forming the basis of Officer's Green's criminal complaint. (Doc. 13-2 at 3). Officer Woods searched the "Justice Exchange," a database not available to Officer Green because the Pell City narcotics division did not receive access to the database until early 2011. (Doc. 13-3 at 2). Officer Woods determined that 0.7 grams of the pseudoephedrine Ms. Carver purchased during the relevant time was for Children's Sudafed. (Doc. 13-3 at 2). Because Alabama law exempted purchases for children's medication under the statute,[6] Ms. Carver only purchased 5.76 grams of pseudoephedrine covered by the statute within a thirty day period in February of 2009. (Doc. 13-3). In light of the letter from Ms. Carver's son's physician, the Justice Exchange report, the lack of any other suspicious behavior, and the fact that Ms. Carver was not known to be involved in the drug community, Officer Woods encouraged Harmon to dismiss the charges against her. (Doc. 13-3 at 3).

---

[6] The statute criminalizing the purchase of greater than 6 grams of pseudoephedrine within a 30 day period with the intent to manufacture was not applicable to "pediatric products labeled pursuant to federal regulation primarily intended for administration to children under 12 years of age according to label instructions." Ala. Code § 20-2-120(c)(4).

Ms. Carver signed a release purportedly absolving Pell City and Officers Green, Jones, and Woods from civil liability, and charges were immediately dismissed.[7] (Doc. 13-4 at 7-8). The Municipal Court entered an order of dismissal upon which the prosecutor wrote, "The City of Pell City will do everything in its power to ensure that Mrs. Carver's arrest be purged from all city and state systems." (Doc. 13-4 at 8). Officer Woods also wrote on the motion to dismiss that the "warrant should not have been taken [and that] parents were buying kid's Sudafed for their child." (Doc. 13-4 at 8). Shortly thereafter, Officer Woods explained to Ms. Carver's supervisor and the school board that the charges had been dismissed and that Ms. Carver had not committed a crime. (Doc. 13-3 at 3).

## IV.   ANALYSIS

### A.   Ms. Carver's Section 1983 Claims

#### 1.   Official Capacity Claims

A § 1983 claim against a person in his official capacity seeks to impose liability on the entity which he represents, and not on him personally. *See, e.g., Welch v. Laney*, 57 F.3d 1004, 1008 (11th Cir. 1995) ("Welch's action against the Sheriff and

---

[7] Although Ms. Carver disputes the validity of the release, the Defendants have abandoned their argument that the release provides sufficient grounds for summary judgment. (Doc. 17 at 1-2) ("While the undersigned is doubtful that [Ms. Carver] has presented sufficient evidence to overcome the legal tests for setting aside the release as set forth in Defendants' initial brief . . . the court does not need to wrestle with that issue because Defendants drop that ground for summary judgment."). As a result, the court does not address this argument.

Chief Deputy Sheriff in their official capacities imposes liability on the entity they represent, and not on them as individuals.") (citing *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985)).  The Eleventh Circuit has explained the distinctions between these two capacities in more detail:

> Personal capacity suits seek to impose personal liability upon a government official for actions he takes under the color of state law. Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.' In other words, a plaintiff in an action against a government official in her personal capacity can recover only against the officials personal assets. The assets of the governmental are not accessible. The reverse is true in an official capacity lawsuit. Furthermore, 'to establish personal liability in a § 1983 action, it is enough to show that the official acting, under color of state law, caused the deprivation of a federal right . . . [I]n an official-capacity suit, the entity's policy or custom must have played a part in the violation of federal law.'

*Yeldell v. Cooper Green Hosp., Inc.*, 956 F.2d 1056, 1060 (11th Cir. 1992) (internal quotation marks and citations omitted). Therefore, any official capacity claims that Ms. Carver seeks to assert against Chief Turley and Officers Jones, Woods, and Green are duplicative of her federal claims brought against Pell City. Accordingly, the Defendants' Motion is due to be granted as to all official capacity federal claims asserted against Chief Turley, and all such claims asserted against Officers Jones, Woods, and Green.

    2.    <u>Failure to Train/ Supervise and Failure to Enact or Enforce Policy</u>

        *a.*    *City of Pell City*

Ms. Carver's complaint raises two § 1983 claims against Pell City– a claim for failure to train and supervise and a claim for failure to enact and/or enforce policy. As a preliminary matter, Ms. Carver failed to respond to the Defendants' motion for summary judgment as to her claims against Pell City for failure to enact and/or enforce policy. By not responding, Ms. Carver abandoned that claim against Pell City. *See, e.g., Davis v. Coca-Cola Bottling Co., Consol*, 516 F.3d 955, 971 n. 36 (11th Cir. 2008) ("[Plaintiff] did not defend the claim on summary judgment; thus he abandoned it."); *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1322 (11th Cir. 2001) (finding claim abandoned when argument not presented in initial response to motion for summary judgment).

However, even had Ms. Carver not abandoned her claims against Pell City, Pell City would still be entitled to summary judgment as to all of Ms. Carver's § 1983 claims. The law is well settled that a municipality cannot be held liable under 42 U.S.C. § 1983 under a theory of *respondeat superior*, meaning that "a municipality cannot be held liable *solely* because it employs a tortfeasor." *Monell v. Dept. of Social Services of New York*, 436 U.S. 658, 691 (1978) (emphasis in original). Rather, before a municipality can be held accountable for the conduct of a police officer, a plaintiff must show that the execution of the local government's "policy" or "custom" was the cause of the injury. *Id.* at 694. In other words, "[a] local government may be held

17

liable under § 1983 only for acts for which it is actually responsible, 'acts which the [local government] has officially sanctioned or ordered.'" *Turquitt v. Jefferson Cnty.*, 1137 F.3d 1285, 1287 (11th Cir. 1998) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-480 (1986)).

Rule 56(e) of the Federal Rules of Civil Procedure requires the non-moving party to go beyond the pleadings in answering the movant, once the moving party has met its burden. *Celotex*, 477 U.S. at 324.[8] Here, the Defendants argue that the Plaintiff cannot prove that Pell City had an unconstitutional policy or prove causation between any unconstitutional policies and any violation of Ms. Carver's constitutional rights. (Doc. 14 at 22). Indeed, Ms. Carver has not presented any evidence that Pell City has any policy or custom that proximately caused her injury. Instead, Ms. Carver, with no citation to evidence, makes the bare assertions that "the Defendants failed to train and supervise police officers and ensure that proper investigations were conducted in order to prevent the issuance of erroneous warrants which led to the unlawful arrest of the Plaintiff," (doc. 16 at 4), and that "the Defendants failed to properly train Defendant Franklin Green and supervise his activity to ensure the accuracy of the pharmacy logs or that Defendant Green took independent steps to verify the veracity of the

---

[8]  By its own affidavits – or by the depositions, answers to interrogatories, and admissions on file – the nonmovant must designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324.

information contained therein," (doc. 16 at 5). Ms. Carver presented no evidence to establish a causal link between any policy of, or failure to train or enforce its policies by, Pell City and the plaintiff's arrest. Accordingly, Pell City cannot be held liable on the Plaintiff's claims under § 1983, and, thus, summary judgment for the § 1983 claims against Pell City is due to be granted.

3.     <u>Individual Capacity Claims</u>

a.     *Chief Turley*

Ms. Carver also asserts claims against Chief Turley, in his individual capacity, for failure to train and supervise in violation of 42 U.S.C. § 1983 and failure to enact and/or enforce policy in violation of 42 U.S.C. § 1983. Ms. Carver failed to respond to the Defendants' contentions in support of their Motion and, consequently, abandoned her claim. *See Wilkerson*, 270 F.3d at 1322 (holding that claims not addressed in response to motion for summary judgment are deemed abandoned). However, even if Ms. Carver's claims were not abandoned, they fail as a matter of law because there is no liability for supervisory officials based solely on *respondeat superior* or vicarious liability. *Hardin v. Hayes*, 957 F.2d 845, 849 (11th Cir. 1992).

> Supervisor liability [under § 1983] occurs either when the supervisor <u>personally participates</u> in the alleged constitutional violation or when there is a <u>causal connection</u> between actions of the supervising official and the alleged constitutional deprivation. The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and

19

> [he] fails to do so. The deprivations that constitute widespread abuse
> sufficient to notify the supervising official must be obvious, flagrant,
> rampant, and of continued duration, rather than isolated occurrences.

*Braddy v. Florida Dept. of Labor and Employment Sec.*, 133 F.3d 797, 802 (11th Cir.

1998) (emphasis supplied) (quoting *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir.

1990). Further, a supervisory official is not liable for an injury that results from his

failure to train subordinates unless his "failure to train amounts to deliberate

indifference to the rights of persons with whom the police come into contact."

*Popham v. City of Talladega*, 908 F.2d 1561, 1565 (11th Cir. 1990).

Thus, the question here is whether Ms. Carver presented evidence that Chief

Turley failed to train and supervise officers or enact and enforce policy and that his

failure to train or enact policy amounted to deliberate indifference to the rights of

others. Ms. Carver presents no evidence of either. *See Braddy*, 133 F.3d at 802. Ms.

Carver merely asserts that Chief Turley "failed to properly train Defendant Franklin

Green and supervise his activity to ensure the accuracy of the pharmacy logs or that

Defendant Green took independents steps to verify the veracity of the information

contained therein" and that "failure to train and/or supervise resulted in the unlawful

arrest and false imprisonment and of the plaintiff." (Doc. 16 at 5). Ms. Carver does

not, however, cite any evidence that Chief Turley acted unlawfully or knew that

subordinates would act unlawfully. *Cottone*, 326 F.3d at 1360. Nor does Ms. Carver

20

provide any evidence of a history of widespread abuse that would put a responsible supervisor on notice of the need to correct the alleged deprivation or that any constitutional deprivations were obvious, flagrant, rampant, and of continued duration. Because Ms. Carver has failed to designate specific facts showing there is a genuine issue for trial, the Defendants' Motion as to Ms. Carver's § 1983 claims against Chief Turley in his individual capacity is due to be granted. *See Celotex*, 477 U.S. at 324.

### b.    *Officers Jones, Woods, and Green*

Ms. Carver's constitutional claims asserted against Officers Jones, Woods, and Green are for unlawful seizure and excessive force. (Doc. 1 at 4). Ms. Carver alleges that these officers' actions constituted an unlawful seizure of her person and violated her rights secured by the Fourth, Fifth and Fourteenth Amendments to the United States Constitution. The Defendants seek summary judgment on all of Ms. Carver's 42 U.S.C. § 1983 claims as to these officers, and provide specific reasons why summary judgment is due to be granted.

### i.    Arrest Claims

Ms. Carver asserts that these officers are liable for an unconstitutional arrest. (Doc. 1 at 4). Ms. Carver was arrested for the illegal purchase of pseudoephedrine in violation of Alabama Code § 20-2-190. At the time, Alabama law made unlawful the purchase of more than 6 grams of ephedrine or pseudoephedrine by an individual

21

within a 30 day period with the intent to manufacture. Ala. Code § 20-2-190. Ms. Carver maintains that her arrest was improper under the Fourth Amendment because these Defendants' "investigation of the underlying criminal conduct which resulted in the issuance of the arrest warrant in this matter comprised of merely reviewing pharmacy log records showing that [she] purchased quantities of pseudoephedrine." (Doc. 16 at 1-2). The day after her arrest, she established that a portion of the pseudoephedrine she purchased in February 2009 was children's Sudafed, which was exempted from the statute.[9] (Doc. 13-3 at 2). Accordingly, she had committed no crime, and the charges were dismissed. (Doc. 13-3 at 3).

"Under the Fourth Amendment, an individual has a right to be free from 'unreasonable searches and seizures.'" *Skop v. City of Atlanta*, 485 F.3d 1130, 1137 (11th Cir. 2007). "In Fourth Amendment terminology, an arrest is a seizure of a person, and the 'reasonableness' of an arrest is, in turn, determined by the presence or absence of probable cause for the arrest. *Skop*, 485 F.3d at 1137 (internal citation omitted). "While an officer who arrests an individual without probable cause violates the Fourth Amendment, this does not inevitably remove the shield of qualified immunity." *Id.* In fact, the Supreme Court has observed that "it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that

---

[9] *See* fn. 6, *supra*.

22

probable cause is present, and that [the Court has] indicated that in such cases those officials . . . should not be held personally liable." *Anderson v. Creighton*, 483 U.S. 635, 641 (1987); *Skop*, F. 3d at 1137. "Thus even if we determine that the officer did not in fact have probable cause, we apply the standard of "arguable probable cause,' that is, whether 'reasonable officers in the same circumstances and possessing the same knowledge as the Defendants *could have believed* that probable cause existed to arrest.'" *Id*. Accordingly, "if the arresting officer had arguable probable cause to arrest for any offense, qualified immunity will apply." *Brown v. City of Huntsville*, 608 F.3d 724, 735 (11th Cir. 2010) (citing *Skop*, 485 F.3d at 1138). "Whether an officer possesses probable cause or arguable probable cause depends on the elements of the alleged crime and the operative fact pattern." *Id*. Therefore, the court must consider whether these officers had arguable probable cause to arrest the Plaintiff.

### aa.    Officer Jones

The Defendants' Motion as to Ms. Carver's false arrest claims against Officer Jones is due to be granted. In support of his Motion, Officer Jones argues that, because he was acting pursuant to an arrest warrant, probable cause existed to arrest Ms. Carver, and that he therefore is protected by qualified immunity.  Here, the undisputed facts indicate that Officer Jones was acting pursuant to an arrest warrant when he arrested Ms. Carver on May 16, 2011. Because Officer Jones was acting pursuant to

an arrest warrant, as a relying officer, he cannot be subjected to civil liability if it later turns out that the information was wrong and the arrest accordingly not supported by probable cause. *See Williams v. Town of White Hall*, 450 F. Supp. 2d 1300, 1305 (M.D. Ala. 2006) ("When a law enforcement official reasonably relies on information received from fellow officers in deciding to arrest a suspect, the relying officer is not subject to civil liability if it later turns out that the information was wrong and the arrest not supported by probable cause.") (citing *United States v. Hensley,* 469 U.S. 221, 230 (1985)).

Even if Ms. Carver's arrest had not been pursuant to a warrant, the doctrine of qualified immunity would protect Officer Jones from civil liability. Qualified immunity shields government officials preforming discretionary functions from § 1983 suits unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. at 739. Importantly, an officer may be shielded from liability under the doctrine of qualified immunity even when probable cause for the arrest did not exist. If the arresting officer had arguable probable cause to arrest for any offense, qualified immunity may apply. *Grider v. City of Auburn*, 618 F. 3d 1240, 1257 (11th Cir. 2010). "Showing arguable probable cause does not, however, require proving every element of a crime." *Id*. Instead, the court determines whether 'reasonable officers in the same

24

circumstances and possessing the same knowledge as the Defendants *could have believed* that probable cause existed to arrest.'" *Id*. (emphasis supplied).

Here, the undisputed evidence confirms that, even <u>if</u> Officer Jones did not have <u>actual</u> probable cause to arrest Ms. Carver for the illegal purchase of pseudoephedrine, the pharmacy logs reviewed by Officer Green are sufficient to establish <u>arguable</u> probable cause for her arrest. At the time, Ala. Code § 20-2-190(c)(2) criminalized the purchase of greater than 6 grams of ephedrine or pseudoephedrine within a thirty day period with the intent to manufacture.[10] Ms. Carver admits to purchasing 6.46 grams of pseudoephedrine within a 14 day period in February of 2009. (Doc. 13-5 at ¶ 10). Although Ms. Carver later established that a percentage of the pseudoephedrine purchased in February of 2009 was children's Sudafed and not "countable" under the law, Ms. Carver does not dispute that PCPD did not gain access to the Justice Exchange database until <u>after</u> the time of her arrest. AF. No. 20. Accordingly, reasonable officers in the same circumstances and possessing the same knowledge as Officer Jones *could have believed* that probable cause existed to arrest her pursuant to Ala. Code § 20-2-190(c)(2). Furthermore, Ms. Carver has not cited any binding

---

[10] "While intent is an element of the crime which must be proved at trial, it is not necessary in order to establish probable cause to arrest." *U.S. v. Everett*, 719 F.2d 1119, 1120 (11th Cir. 1983); *Jordan v. Mosley*, 487 F.2d 1350, 1356 (11th Cir. 2007) (this "circuit has concluded that, even for a criminal statute that requires proof of an intent to defraud for a conviction, an arresting officer does not need evidence of the intent for probable cause to arrest to exist").

authority suggesting that the arguable probable cause standard is not reached under these undisputed facts. Instead, Ms. Carver's Opposition to the Defendants' Motion for Summary Judgment merely asserts that "the Defendants conduct in this matter violated her Constitutional rights under the 4th and 14th Amendment to be free from unreasonable seizures." (Doc. 16 at 4). Simply put, Ms. Carver never went beyond the pleadings in answering the Defendants' Motion. *See Celotex*, 477 U.S. at 324. As a result, Officer Jones's Motion is due to be granted as to Ms. Carver's false arrest claims.

### bb.    Officers Green and Woods

Defendants' Motion is also due to be granted as to Ms. Carver's § 1983 claims for unlawful arrest against Officers Green and Woods. Here, the undisputed evidence establishes that Officers Green and Woods had no personal participation in Ms. Carver's arrest on May 16, 2011. In fact, Officer Woods's involvement in the case began the day <u>after</u> Ms. Carver's arrest, when he was contacted by the city prosecutor to investigate the facts forming the basis of the criminal complaint and warrant executed against Ms. Carver.  Similarly, Officer Green's employment with Pell City ended in 2010, <u>before</u> Ms. Carver's arrest. (Doc. 13-1 at 2). Officer Green merely signed the criminal complaint and did not participate in the arrest. Because Officer Green did not participate in the arrest and was only involved in the issuance of the

warrant, which constitutes legal process, Ms. Carver cannot state a claim against Officer Green for false arrest. *See Carter v. Gore*, 557 F. App'x 904, 906 (11th Cir. 2014) (holding that a plaintiff's only claim against the officer who submitted an affidavit to secure a warrant was for malicious prosecution, not false arrest). Consequently, Officers Woods and Green's Motion as to Ms. Carver's claims for false arrest is due to be granted.

ii.    Excessive Force Claims

In addition to her federal unlawful arrest claims, Ms. Carver also asserts that the Defendant Officers used excessive force in violation of her rights secured by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. (Doc. 1 at 4). The court finds that the Defendants' Motion is due to be granted as to Ms. Carver's excessive force claims. The Plaintiff's Response to Defendants' Motion for Summary Judgment fails to contest the entry of summary judgment on her excessive force claims. Therefore, Ms. Carver has abandoned her excessive force claims against the Defendant Officers. *See, e.g., Wilkerson*, 270 F.3d at 1322. However, even if Ms. Carver had not abandoned her claims for excessive force, these officers are entitled to judgment as a matter of law for the following reasons.

bb.    Officer Jones

Ms. Carver alleges that Officer Jones used excessive force against her in violation of her constitutional rights. In response to Ms. Carver's claims, the Defendants note that Ms. Carver's excessive force claim is based solely on her contention that the handcuffs were too tight and uncomfortable (doc. 14 at 15), and contend that Ms. Carver's physical restraint and handcuffing was *de minimis* (doc. 14 at 16). The undisputed facts establish that Officer Jones executed the warrant for Ms. Carver's arrest on May 16, 2011. (Doc. 13-2 at 3). Officer Jones handcuffed Ms. Carver with her hands behind her back and transported her to the Pell City Police Department. (Doc. 13-2 at 3). Ms. Carver's handcuffs were "finger tight," meaning that Officer Jones was able to place a finger between the inside of the cuffs and Ms. Carver's wrist. (Doc. 13-2 at 3). Her handcuffs were double locked and unable to become any tighter. (Doc. 13-2 at 3). Ms. Carver does not provide any other evidence that "excessive force" was used by Officer Jones. Indeed, some force by a police officer when making a custodial arrest is not only lawful, but necessary, and the application of *de minimis* force, without more, will not support a claim for unlawful force. *See Durruthy v. Pastor*, 351 F.3d 1080, 1094 (11th Cir. 2003) ("the application of *de minimis* force, without more, will not support a claim for excessive force in violation of the Fourth Amendment").

The Eleventh Circuit has held that "a claim that any force in an illegal stop or arrest is excessive is subsumed in the illegal stop or arrest claim and is not a discrete excessive force claim." *Jackson v. Sauls*, 206 F.3d 1156, 1171 (11th Cir. 2000) (citing *Williamson v. Mills*, 65 F.3d 155, 158-59 (11th Cir. 1995)). The right to make an arrest "necessarily carries with it the right to use some degree of physical coercion or threat to effect it." *Grahm v. Connor*, 490 U.S. 386, 389 (1989). "An excessive force claim evokes the Fourth Amendment's protection against the use of an unreasonable quantum of force (i.e., non-*de minimis* force unreasonably disproportionate to the need) in effecting an otherwise lawful arrest." *Bashir v. Rockdale County Ga.*, 445 F.3d 1323, 1332 (11th Cir. 2006). "When properly stated, an excessive force claim presents a discrete constitutional violation relating to the manner in which an arrest was carried out, and is independent of whether law enforcement had the power to arrest." *Id.* "A claim like [Ms. Carver's] that the [Officers] used excessive force in the arrest because they lacked the right to make the arrest is not a discrete constitutional violation; it is dependent upon the inseparable from [her] unlawful arrest claim." *Id.* (citing *Jackson v. Sauls*, 206 F.3d 1156, 1171 (11th Cir. 2000)). "[W]here an excessive force claim is predicated solely on allegations the arresting officer lacked the power to make arrest, the excessive force claim is entirely derivative of, and is subsumed within, the unlawful arrest claim." *Id.* Because Ms. Carver's excessive force

29

claim is based only on the fact that she was handcuffed, not that an unreasonable quantum of force was used under the circumstances, Ms. Carver failed to present a discrete excessive force claim. Therefore, her excessive force claims against Officer Jones fail as a matter of law.

### cc.    Officers Woods and Green

Ms. Carver also asserts claims against Officers Woods and Green for the use of excessive force. As noted above, Ms. Carver failed to present a discrete excessive force claim against Jones, the arresting officer. Additionally, it is undisputed that neither Officer Woods nor Officer Green was present at the time of her arrest. It is also undisputed that neither Officer Green or Officer Woods ever touched her. Although "an officer who is present at the scene and fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held liable for his nonfeasance," *Riley v. Newton*, 94 F.3d 632, 635 (11th Cir. 1996), the undisputed facts establish Officer Jones did not use excessive force <u>and</u> that neither Officer Green nor Officer Woods was present during Ms. Carver's arrest. Consequently, Defendants' Motion as to Ms. Carver's  excessive force claims against Officers Woods and Green is also due to be granted for this alternative reason.

### B.    State Law Claims

In addition to her federal claims against the Defendants, Ms. Carver also asserts a number of state law claims against the Defendants, including claims for negligence, malicious prosecution, false arrest, and false imprisonment. (Doc. 1 at 5, 7). Like her federal claims, Ms. Carver failed to contest the entry of summary judgment on a number of her state law claims. Therefore, Ms. Carver has abandoned the claims that she did not address in her response to the Defendants Motion for Summary Judgment. *See, e.g., Wilkerson*, 270 F.3d at 1322. In addition to the fact that Ms. Carver abandoned a number of her claims, the Defendants' Motion is alternatively due to be granted because her claims fail as a matter of law.

### 1. **Negligence**

Ms. Carver alleges that "[o]n the incident date, the Defendants' (James Leo Jones, Richard Woods, and Franklin Green) aforementioned acts of unwanted touching of Plaintiff were without reasonable justification or excuse, breached said defendants' duty not to touch Plaintiff in the manner they did, individually and in concert with one-another, and proximately caused Plaintiff to suffer the aforementioned harm and damages on and following the incident date." (Doc. 1 at 5). Then, in her response to the Defendants' Motion, Ms. Carver "maintains that the Defendants acted negligently, not only in failing to verify the information in the pharmacy log and in obtaining an erroneous arrest warrant but also in the more than

31

twenty-four months it took to serve the Plaintiff with said warrant." (Doc. 16 at 5). Although the Plaintiff's complaint purportedly asserts a claim for negligence, the Defendants' Motion treats her negligence claim as an assault and battery claim. The Defendants argue that their Motion is due to be granted because Ms. Carver cannot prove the elements of the torts of "assault" or "battery," that Officer Jones had a warrant based on probable cause, and that the Defendant Officers are immune from liability.

Under the doctrine of state agent immunity, a public actor, such as a law enforcement official, who is exercising discretionary authority is immune from claims that merely allege negligence, unskillfulness, or carelessness with respect to injuries arising out of those functions. *Ex Parte City of Tuskegee*, 932 So. 2d 895, 906 n. 6 (Ala. 2005) ("Although Arnold alleges that John Moon and Theodor Moon were negligent, there is no allegation that their conduct leading to her arrest and the arrest itself falls outside the scope of an action that involves the exercise of discretion or judgment.")*; see also* Ala. Code § 6-5-338(a); *Ex parte Kennedy*, 992 So. 2d 1276, 1281 (Ala. 2008) ("the test for determining whether an officer is entitled to immunity under § 6-5-338(a) is the one articulated in *Cranman* relating to State officers"). Because of the comparable analysis applicable to state agent immunity, summary judgment in favor of the Defendants as to Ms. Carver's state law claims is similarly

appropriate for the reasons that the defense of qualified immunity protects them under federal law.

In particular, as the Supreme Court of Alabama has restated the rule of state agent immunity:

> A state agent [such as a municipal police officer] *shall* be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's . . .
>
> (4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons, or . . .

*Ex Parte Cranman*, 792 So. 2d 392, 405 (Ala. 2000) (emphasis in original). Immunity under § 6-5-338(a) is not absolute; instead, "immunity from tort liability under § 6-5-338(a) 'is withheld if an officer acts with willful or malicious intent or in bad faith.'" *Ex Parte City of Tuskegee*, 932 So. 2d 895, 906-07 (Ala. 2005) (citing *Borders v. City of Huntsville*, 875 So. 2d 1168, 1178 (Ala. 2003)).

> A state agent shall not be immune from civil liability in his or her personal capacity
>
> (1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or
>
> (2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.

*Ex parte Cranman*, 792 So. 2d 392, 405 (Ala. 2000).

The Plaintiff's response to the Defendants' Motion makes clear that her negligence claim is based on these officers' allegedly inadequate investigation prior to obtaining a warrant. (Doc. 16 at 5). It is clear that these officers were engaged in a discretionary function when investigating Ms. Carver's pseudoephedrine purchases. *Ex Parte City of Tuskegee*, 932 So. 2d 895 (citing *Wrigh*t *v. Wynn*, 682 So. 2d 1, 2 (Ala. 1999)) ("Discretionary acts are defined as 'those acts to which there is no hard and fast rule as to the course of conduct that one must or must not take and those acts requiring the exercise in judgment and choice and involving what is proper under the circumstances.'"). Further, the Plaintiff does not dispute that neither of the exceptions to state agent immunity apply. Therefore, the court finds that state agent immunity protects these officers from exposure to personal liability for Ms. Carver's state law claim for negligence. Because "[i]t is well established that, if a municipal police officer is immune pursuant to § 6-5-338(a), then pursuant to § 6-5-338(b), the city by which he is employed is also immune," *City of Tuskegee*, 932 So. 2d at 910 (citing *Howard*, 887 So. 2d at 211), Pell City is also immune from Ms. Carver's negligence claim.

2.      Malicious Prosecution

Ms. Carver also asserts a claim that "Defendants, maliciously and without probable cause therefor, caused the Plaintiff to be arrested on the charge of illegal purchase of pseudoephedrine." (Doc. 1 at 7).[11] "In order to establish a claim for malicious prosecution" under Alabama law, "a plaintiff must prove (1) that a judicial proceeding was initiated by the defendant against the plaintiff, (2) that the judicial proceeding was initiated without probable cause, (3) that the judicial proceeding was initiated by the defendant with a malicious intent, (4) that the judicial proceeding terminated in the plaintiff's favor, and (5) that the plaintiff suffered damage as a result of the defendants' initiation of the judicial proceeding." *Wesson v. Wal-Mart Stores East, L.P.*, 38 So. 3d 746, 750 (Ala. Civ. App. 2009) (citing *Phillips v. K-Mart Corp.*, 682 So. 2d 1390, 1393 (Ala. Civ. App. 1996)). Here, the Defendants argue that there is a lack of evidence to support Ms. Carver's malicious prosecution claim. Specifically, the Defendants argue that Ms. Carver cannot prove the first three elements of her claim for malicious prosecution. In response to the Defendants' Motion, Ms. Carver neither (1) showed that the record in fact contained supporting evidence sufficient to withstand a directed verdict motion, nor (2) proffered evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. *See Fitzpatrick*, 2 F.3d at 1116-17. For example, to

---

[11] Ms. Carver presents no argument to defend her malicious prosecution claims. Accordingly, they were abandoned.

demonstrate that no officer acted with the requisite malicious intent, the Defendants presented evidence that neither Officer Green nor Officer Jones knew Ms. Carver before her arrest and that neither had ill will towards her. (Doc. 13-1 at 3; Doc. 13-2 at 3). Further, Officer Woods merely investigated Ms. Carver's arrest, encouraged charges to be dismissed, and did not initiate any legal process against her. (Doc. 13-3 at 2-3). Ms. Carver failed to dispute any of the Defendants' factual allegations. Additionally, for the above mentioned reasons, these officers are entitled to state agent immunity. Accordingly, her malicious prosecution claims against these officers fail as a matter of law.

### 3.    False Arrest and False Imprisonment

The Defendants' Motion is also due to be granted as to Ms. Carver's state law false arrest and false imprisonment claims.[12] Under Alabama law, "if an arrest is made pursuant to a warrant issued by a lawfully authorized person, neither the arrest nor the subsequent imprisonment is considered 'false.'" *Karrick v. Johnson*, 659 So. 2d 77, 79 (Ala. 1995) (citing *Goodwin v. Barry Miller Chevrolet, Inc.*, 543 So. 2d 1171 (Ala. 1989); *see also Montgomery v. City of Montgomery*, 732 So. 2d 305 (Ala. 1999) ("The law in Alabama is clear that a plaintiff is not entitled to recover for false arrest or imprisonment when he or she is arrested pursuant to a valid warrant issued by a

---

[12]  Ms. Carver presents no argument to defend her false imprisonment claims Accordingly, they were abandoned.

lawfully authorized person."); *Ennis v. Beason*, 537 So. 2d 17, 19 (Ala. 1988). Because Officer Jones arrested Ms. Carver pursuant to the warrant issued by Magistrate Wheeler, neither Ms. Carver's arrest nor subsequent imprisonment was legally false. Additionally, for the above-mentioned reasons, these Defendant Officers are entitled to state agent immunity. Accordingly, and for the aforementioned reasons, the Defendants' Motion is due to be granted as to Ms. Carver's state law claims for false arrest and false imprisonment.

### **4.**     **Intentional Infliction of Emotional Distress**

Count II of Ms. Carver's complaint alleges that the Defendants' conduct "consisted of unprivileged conduct that was intentional and of an extreme or outrageous nature which proximately caused Plaintiff to suffer severe emotional distress." (Doc. 1 at 5). The Defendants contend that the Plaintiff did not establish the *prima facie* elements to state a claim of intentional infliction of emotional distress and that they are immune from liability as a matter of law. (Doc. 14 at 29).[13] Alabama law provides that "[a] state agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's . . . exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting

---

[13] Ms. Carver presents no argument to support her intentional infliction of emotional distress claims against the Defendants. Accordingly, they were abandoned.

to arrest persons." *Ex Parte Butts*, 775 So. 2d 173 (Ala. 2000); *see also* Ala. Code §
6-5-338. Here, the officers were engaged in a discretionary function and Ms. Carver
has not presented any evidence or cited any authority that they acted intentionally or
recklessly. Put simply, Ms. Carver did not present any evidence to support a claim for
intentional infliction of emotional distress, and the officers accordingly are entitled
to judgment as a matter of law.

### IV. CONCLUSION

For all of the forgoing reasons, the Motion is due to be granted as to all of Ms.
Carver's claims. The court will enter a separate final judgment order consistent with
this memorandum opinion.

**DONE** and **ORDERED** this the 8th day of January, 2015.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

38